UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES SURETY
COMPANY,

    Plaintiff,

v.                                              CASE NO. 8:16-cv-3102-T-23TGW

BEST CONSTRUCTION DRYWALL
SERVICES, INC., et al.,

    Defendants.
_____/

### **ORDER**

United States Surety Company issued bonds that secured Best Construction Drywall Services' payment and performance obligations on a construction project at the Brooksville National Guard Armory. Best Construction, Ronald G. Milinovich, and the plaintiff signed a general indemnity agreement[1] that obligates Best Construction and Milinovich to indemnify the plaintiff for any claim against the surety bonds.[2]

---

[1] The indemnity agreement names Best Construction as the principal and Milinovich as the indemnitor. (Doc. 1 at 13–26)

[2] The indemnity agreement requires the defendants to "exonerate, indemnify, keep indemnified, reimburse and save and hold the [plaintiff] harmless from and against any and all demands, liabilities, losses, costs, damages, attorneys' fees and expenses, investigative fees and expenses, accountants' fees and expenses, engineering and other professional or consultants' fees and expenses of any kind, in-house attorneys' fees and expenses, interest, court costs and any and all other types of losses, costs or expenses of whatsoever kind or nature, and from and against all such losses, costs or expenses which the [plaintiff] may sustain or incur." (Doc. 1 at 15)

The plaintiff received (1) a payment bond claim from Banner Supply Company Tampa, LLC, "for the materials it provided on the project at [Best Construction's] request, but for which [Pillar Construction Group] did not receive payment" and (2) a performance bond claim from Pillar, based on Best Construction's "alleged defective or incomplete work" on the project. (Doc. 21 at 5) The plaintiff asserts that Best Construction "advised" the plaintiff to honor fully Banner's claim. (Doc. 21-1 at 3) The plaintiff's "Loss and Recovery Transaction Report" shows that in October 2015 the plaintiff paid Banner $18,290.47 and that in June 2016 the plaintiff paid Pillar $91,666.52. (Doc. 21-1 at 56)

Alleging that the defendants failed to indemnify and reimburse the plaintiff for losses sustained in satisfying both Banner's claim and Pillar's claim, the plaintiff sues for breach of contract (Count I), for equitable subrogation (Count II), for exoneration (Count III), and for common law indemnity (Count IV). The plaintiff asserts that the defendants failed to provide collateral despite repeated demands,[3] failed to provide any valid defenses to the claims, failed to indemnify the plaintiff, and failed to request that the plaintiff resist any claim despite the defendants' receiving

---

If the defendants resist a claim against the bonds, the agreement requires the defendants to request in writing that the plaintiff resist the claim and to deposit cash or collateral with the plaintiff sufficient to cover the claim and to cover the plaintiff's expenses in defending the claim. (Doc. 1 at 16–17)

[3] In May 2016, the plaintiff sent the defendants a demand for a collateral security deposit of $135,000, which, according to the defendants, "greatly exceed[ed]" any possible liability of the plaintiff under the bond. (Doc. 22 at 2)

- 2 -

collateral demand letters. (Doc. 21 at 10) Moving for summary judgment on Count I, the plaintiff argues (Doc. 21) that the indemnity agreement is enforceable, that the defendants' bad faith defense fails, and that the defendants fail to establish a genuine dispute of material fact about the defendants' contractual obligations to the plaintiff.

## DISCUSSION

**Pillar**

In July 2014, Best Construction subcontracted with Pillar. (Doc. 21-1 at 9) Best Construction agreed for $91,666.52 to provide Pillar with metal framing, insulation, and gypsum board and wall covering for the project. (Doc. 22 at 1) As part of the subcontract the defendants and the plaintiff executed a subcontract performance bond (Doc. 21-1 at 9) and a subcontract labor and material bond. (Doc. 21-1 at 10)

In September 2015, Best Construction and Pillar disputed the quality of the work completed on the project and disputed the payment of the balance owed to Best Construction (Best Construction asserts that Pillar owes Best Construction $17,826.45). (Doc. 22 at 2) In April 2016, Pillar received a warranty claim on the project. The warranty claim "centers on the failure to install clips to some walls causing the walls to sway." (Doc. 22 at 2) The defendants assert that Pillar and the plaintiff "decided" that Best Construction was at fault for the purportedly faulty

installation. Best Construction denies liability and states that the construction was performed according to specifications prepared by Pillar's engineer. (Doc. 22 at 2)

The defendants argue that the plaintiff breached the subcontract performance bond by paying Pillar the full amount of the bond without crediting $17,826.45 to Best Construction. Further, the defendants argue that the plaintiff's payment to Pillar resulted in Pillar's receiving a "windfall" to the detriment of the defendants and that the plaintiff ignored the defendants' defenses when negotiating with Pillar.[4] (Doc. 22 at 3–5) The defendants assert that the plaintiff acted in bad faith and that the plaintiff's conduct "rises to the level of a disputed issue of fact." (Doc. 22 at 7)

**Bad faith**

Despite the existence of a surety's liability, a surety can enforce a contractual right under an indemnity agreement if the surety acts in a good faith belief that the agreement requires payment. *Liberty Mut. Ins. Co. v. Aventura Engineering & Const. Corp.*, 534 F. Supp. 2d 1290, 1316 (S.D. Fla. 2008) (Gold, J.). To show bad faith, an indemnitor must show that the surety acted with "deliberate malfeasance," which is "an intentional wrongful act [that] the actor has no legal right to do or any wrongful

---

[4] The defendants assert (1) that the fifteen sections of wall, which are described on the warranty claim and which allegedly sway unacceptably, constitute less than ten percent of the total work by Best Construction and (2) that Pillar approved and paid for the remaining ninety percent or more of the total work. (Doc. 22 at 4) The repairs necessary to fix the alleged defects would not require removal of the faulty sections but would require only spot fixes to each section. (Doc. 22 at 4) Best Construction denies liability and states that the constructed sections performed "exactly" in accord with the designs of Pillar's engineer. (Doc. 22 at 4) The defendants argue that "[d]espite representing less than ten percent of the total work done, [the plaintiff] unreasonably and in bad faith agreed to pay Pillar the full amount of the subcontractor agreement, $91,666.52." (Doc. 22 at 6)

conduct which affects, interrupts, or interferes with the performance of official legal duty." *Employers Ins. of Wausau v. Able Green, Inc.*, 749 F. Supp. 1100, 1103 (S.D. Fla. 1990) (Scott, J.).

"A surety's failure to conduct an adequate investigation of a claim upon a . . . bond, when accompanied by other evidence, reflecting an improper motive, properly may be considered as evidence of the surety's bad faith." *Auto-Owners Ins. Co. v. Southeast Floating Docs, Inc.*, 571 F.3d 1143, 1146 (11th Cir. 2009). "[I]mproper motive can be evidenced by unreasonable conduct on the part of the surety." *Auto-Owners Ins. Co.*, 571 F.3d at 1146. Evidence of an inadequate investigation "must be accompanied by other evidence of improper motive, such as a self-interested settlement." *Auto-Owners Ins. Co.*, 571 F.3d at 1146. But if an indemnitor fails to post contractually required collateral, a surety's paying or settling a claim cannot amount to bad faith. *Liberty Mut. Ins. Co.* 534 F. Supp. 2d at 1316.[5]

The plaintiff argues (1) that the actions about which the defendants complain (including the plaintiff's "paying the penal sum to Pillar") fail to constitute bad faith

---

[5] "[S]everal courts have held that a principal's failure to post collateral defeats the defense of bad faith. See, e.g., *Employers Ins. of Wausau*, 749 F. Supp. at 1102–1103 (allegation of bad faith cannot withstand indemnitors' breach by failing to post collateral); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 721 (5th Cir. 1995) (concluding that the surety did not settle in bad faith a disputed claim that was being litigated when the principal failed to post the collateral which would have prevented the surety from settling with the bond obligee); *Gen. Accident Ins. Co. of Am. v. Merritt–Meridian Constr. Corp.*, 975 F. Supp. 511, 516 (S.D.N.Y. 1997) (settling disputed claims after indemnitors failed to post collateral defeats finding of bad faith); *United States Fid. & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 585 (M.D. Pa. 1998) (concluding that 'Defendants ignored repeated requests by the plaintiff to provide collateral security, in violation of a surety agreement, weighs against a finding that the surety acted in bad faith in settling claims.')." *Liberty Mut. Ins. Co.*, 534 F. Supp. 2d at 1316.

because the indemnity agreement "unequivocally permitted" the plaintiff to resolve the claims and (2) that the defendants' only bad faith defense derives from the defendants' disagreement with the results of the plaintiff's investigation and settlement. (Doc. 21 at 15–16)

The defendants respond that Best Construction proffered the plaintiff several plausible defenses to the warranty claim, that the plaintiff "unilaterally" and "improperly" disregarded the defenses during the investigation of Pillar's claims (Doc. 22 at 5), and that the plaintiff unreasonably overpaid the claim for alleged improper work.[6] (Doc. 22 at 6)

Under the indemnity agreement the plaintiff can settle Pillar's claim and Banner's claim. The surety agreement requires the defendants to post collateral in the event of a claim on the surety bonds, but the defendants fail to show that they

---

[6] Also, the defendants accuse the plaintiff of disregarding the subcontract performance bond agreement by denying Best Construction's contractual right to a set-off (by the plaintiff's failing to credit Best Construction $17,826.45). (Doc. 22 at 6) The defendants argue that "[i]nstead, [the plaintiff] executed the Bond Buy Back and Release Agreement which incorrectly and improperly characterized the contract balance owed to [Best Construction] as $0.00. . . . [The plaintiff] agreed to essentially refund Pillar the full amount of the Subcontractor agreement, including funds Pillar never paid." (Doc. 22 at 7) The plaintiff asserts that the defendants' affirmative defense of set-off fails under the terms of the Bond Buy Back and Release Agreement and that Best Construction "has the ability to pursue Pillar if it believes it is still owed money on the project, but this is not a defense to the amount of money the indemnitors owe [Best Construction]." (Doc. 21 at 19)

But "[w]ith respect to defenses, it is well settled that the only defense to indemnity is bad faith on the part of the surety." *Great Am. Ins. Co. v. Gen. Contractors & Constr. Mgmt.*, No. 07-21489-CIV, 2008 WL 2245986 *4 (S.D. Fla. May 29, 2008) (Ungaro, J.) (citing *Liberty Mut. Ins. Co. v. Aventura Engineering & Const. Corp.*, 534 F. Supp. 2d 1290, 1319–20 (S.D. Fla. 2008); *Employers Ins. of Wausau v. Able Green, Inc.*, 749 F. Supp. 1100, 1103 (S.D. Fla. 1990)). Set-off is no defense to a claim for breach of an indemnity agreement.

posted any collateral. The defendants' failure to post collateral precludes the defendants' relying on the defense of bad faith. But even if the defendants were not precluded from raising a bad faith defense to Pillar's claim, the defendants fail to show that the plaintiff inadequately investigated Pillar's claim[7] and almost certainly fail to show that the plaintiff acted with "deliberate malfeasance" and with "improper motive, such as a self-interested settlement."

## CONCLUSION

The plaintiff's motion (Doc. 21) for summary judgment on Count I is **GRANTED**. Once Counts II, III, and IV are resolved, an order shall direct the clerk to enter judgment on Count I.

ORDERED in Tampa, Florida, on May 17, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

---

[7] The defendants argue that the plaintiff acted in bad faith in settling Pillar's claim, not Banner's claim, the latter of which the defendants ordered the plaintiff to satisfy fully. (Doc. 21-1 at 3) The defendants offer no plausible defense for failing to indemnify the plaintiff for Banner's claim.